## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN ELAINE, for herself and a class, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| CREDIT CONTROL LLC, | : | No. 2:15-cv-01271-RAL |
| LVNV FUNDING LLC, | : | |
| RESURGENT CAPITAL SERVICES LP, | : | |
| and ALEGIS GROUP LLC, | : | |
| Defendants. | : | |

## **MEMORANDUM**

Before me is Plaintiff Dawn Elaine's Request for Attorneys' Fees and Costs;[1] Defendants Credit Control, LLC, LVNV Funding, LLC, Resurgent Capital Services, LP and Alegis Group, LLC's Response in Opposition to Plaintiff's Request for Attorneys' Fees and Costs (ECF No. 91); Plaintiff's Brief in Opposition to Defendants' Objections to Request for Attorneys' Fees and Costs (ECF No. 96); Defendants' Reply Brief (ECF No. 97); and the parties' Joint Appendix (ECF No. 93). For the following reasons, I will grant Plaintiff's Request for Fees and Costs expended during the litigation, as detailed in this Memorandum, and will conduct a final hearing regarding the fees to be awarded for the litigation of the fee issue itself, as set forth below.

---

[1] Discussions concerning attorney's fees began during the settlement process, during which Plaintiff provided the initial request for fees to Defendants without a formal pleading. Therefore, the initial pleading on the docket regarding the fee issue is the Defendants' "response in opposition." (ECF Doc. 91). At the time Defendants' "response" was filed, Plaintiff had made no formal written request for fees, although she had provided detailed bills to Defendants as part of the parties' discussions. Plaintiff therefore styled her pleading in response her "brief in opposition to Defendants' objections."(ECF Doc. 96). The final substantive pleading is Defendants' "reply in support of their opposition to Plaintiff's request." (ECF Doc. 97). The Joint Appendix was compiled and filed in the midst of these substantive pleadings, at ECF Doc. 93.

## I.  BACKGROUND

Plaintiff Dawn Elaine for herself and a class, seeks an award of $151,150.50 in attorney's fees, which represents a decreased request for fees incurred during the litigation, with an addition for fees incurred preparing her response to the Defendants' objections to her original request for fees, pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. Plaintiff's request for fees was made following her acceptance of an Offer of Judgment from Defendants in July of 2016. This protracted litigation began in March of 2015 with the filing of the class-action complaint, and was ultimately settled on July 8, 2016. *See* ECF No. 73, Notice by Plaintiff Dawn Elaine of Withdrawal Without Prejudice of Pending Motions; ECF No. 91 at 2, Defendants' Opposition to Attorney Fees. In addition to extensive motions practice, the parties participated in over a dozen settlement conferences prior to the resolution of the underlying dispute.

## II.  DISCUSSION

### A.  Legal Standard.

A prevailing plaintiff may recover "'the costs of the action, [under the FDCPA] together with a reasonable attorney's fee as determined by the court.'" *Alexander v. NCO Fin. Sys. Inc.*, No. 11-401, 2011 WL 2415156, at *2 (E.D. Pa. June 16, 2011) (quoting 15 U.S.C. § 1692k (a)(3)); *see also Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). "Under Section 1692k (a)(3), a plaintiff may be considered a prevailing party if the plaintiff succeeds 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Navarro v. Monarch Recovery Management Inc.*, No. 13-3594, 2014 WL 2805244, at *1 (E.D. Pa. June 20, 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quotation omitted)).

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Id.*

The calculation of the number of hours reasonably expended multiplied by a reasonable rate is known as the lodestar. "The lodestar 'provides an objective basis on which to make an initial estimate of the value of the lawyer's services.' To determine a reasonable hourly rate, the court should evaluate both the attorney's customary billing rate and the prevailing market rates in the relevant community." *Navarro* at *2, quoting *Hensley* at 433. *See also Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). Courts will look to the rate charged by attorneys in the community where the case is litigated to determine the market rate. *See Pub. Interest Research Grp. Of N.J., Inc. v. Windall*, 51 F.3d 1179, 1186-88 (3d Cir. 1995). There is no "hard and fast" rule regarding what that "community" might be. *Id.* at 1186.

It is Plaintiff's burden to produce sufficient evidence of the "reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). A plaintiff should normally support their assertion of a reasonable market rate "by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *Wade v. Colaner*, No. 06-3715, 2010 WL 5479625, at *4 (D.N.J. Dec. 28, 2010). The Court should then assess the skill and experience of the prevailing party's attorneys, comparing their rates to those of attorneys in the community performing similar

services and having comparable skill, experience, and reputation. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). If a plaintiff fails to meet this burden, "the court must exercise its discretion in determining a reasonable hourly rate. *Navarro*, at *2, citing *Washington v. Phila. Cnty. Ct of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996).

A court may also consider the twelve factors first articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974). They are:

1) Time spent and labor required;

2) Novelty and difficulty of the questions;

3) Skill requisite to perform the legal services properly;

4) Preclusion of other employment by the attorney due to acceptance of the case;

5) Customary fee in the community;

6) Whether the fee is fixed or contingent;

7) Time limitations imposed by the client or the circumstances;

8) Amount of time involved and the results obtained;

9) Experience, reputation, and ability of the attorney;

10) Undesirability of the case;

11) Nature and length of the professional relationship with the client; and

12) Awards in similar cases.

*Id.* A court may use these factors as a basis to adjust the lodestar amount. *Hensley*, 461 U.S. at 434 n. 9; *see also Zavodnick v. Gordon & Weisberg, P.C.*, No. 10-7125, 2012 WL 2036493, at *4 (E.D. Pa. June 6, 2012) (analyzing relevant *Johnson* Factors); *Dee v. Borough of Dunmore*, 548 Fed. App'x. 58, 64 (3d Cir. 2013) (reaffirming use of the *Johnson* factors).

When considering a request for attorney's fees, a district court must "decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those hours that are excessive, redundant, or otherwise unnecessary." "In response to the specific objections made by a party opposing the award of fees and costs, a court must conduct a 'thorough and searching analysis' to identify charges that should be excluded." In addition, time that could not be billed to a client may not be imposed on an adversary, thus foreclosing recovery for clerical or administrative tasks.

*Navarro*, at \*5 (internal quotation corrected, *see Williams v. NCO Financial Systems, Inc.*, 2011 WL 1791099, at \*6 (E.D.Pa. 2011); *Evans,* 273 F.3d 346, 362).

III.    ANALYSIS

Plaintiff requests reimbursement of attorney's fees in the amended amount of $151,150.50, and costs in the amount of $6,009.95.[2] The amended figure set forth in Plaintiff's brief in opposition to defendants' objection to Plaintiff's original request for attorney's fees and costs, ECF No. 96, represents a reduced figure for fees expended by the Edelman and Sabatini Firms during the litigation, but with the addition of $16,578.00 in fees incurred in the preparation of the responsive pleading addressing defendant's objections to the original request for fees.

The parties filed a joint appendix which included Plaintiff's counsels' bills through December 2, 2016; and declarations of attorneys Francis R. Greene, addressing the rates of attorneys from the Edelman firm; and Carlo Sabatini, addressing the rates of attorneys and paralegals from the Sabatini firm.[3] ECF No. 93. The joint appendix also includes two declarations from attorneys not involved in the litigation. The first, from David A. Searles, Esq., who reviewed the file at the request of Plaintiff, addressed the hourly rates charged by Plaintiff's counsel. *Id.* at 103. The second, from Philip D. Stern,

---

[2] Defendants have made no objection to the costs request, and costs will be awarded in their full amount.
[3] A tally of the bills submitted in the joint appendix appears to request approximately $145,159.00 in attorney's fees, (not inclusive of fees accrued in responding to Defendant's objections to Plaintiff's request for fees and costs) and $6,009 in costs.

Esq., who reviewed the pleadings in the litigation and the bills of both firms, renders an opinion as to the reasonableness of the time charged. *Id.* at 107. Finally, the joint appendix includes the fee schedule from Community Legal Services of Philadelphia. *Id.* at 114.

Defendants' 63-page "response in opposition to Plaintiff's request for attorney's fees and costs," includes approximately 45 pages of line-by-line objections to Plaintiff's initial billing. Defendants made the following general categories of objections to Plaintiff's initial request for fees:

1) The hourly rates charged by all of the attorneys should be reduced.

2) The bills included time for clerical work and inter- and intra-attorney communications, and duplicate entries, which should be excluded.

ECF No. 91, at 4-61.

Pursuant to my order of January 13, 2017, Plaintiff responded to Defendants' objections with a 25 page brief in opposition to Defendant's objections, and 46 pages of line-by-line billing documents. After eliminating invoiced amounts by several attorneys in their entirety, in direct response to Defendants' specific arguments to discreet charges, Plaintiff eliminated a number of billing entries from its original bills.

Defendants filed a reply to Plaintiff's brief in opposition to their initial objections, reiterating their original objections to the hourly rates charged by attorneys Sabatini, Greene, Soule and Freeman. Defendants request that this Court conduct "a hearing on the reasonableness of the hourly rates sought by counsel for Plaintiff," which "would allow for both Plaintiff and Defendants to present affidavits and other evidence to support their positions regarding reasonable market rates for Plaintiff's attorneys in this matter." ECF No. 97, p. 3.

Defendants also continue to press their objections to "time expended on purely clerical activities, intra- or inter-office communications or duplicate efforts," ECF No. 97 at p. 4, and request leave of this Court "to fully brief their Response to Plaintiff's Supplemental Request," *id.* at p. 6, suggesting in a footnote that Plaintiff should be limited to $4,660.00 in attorney's fees for the preparation of the brief in opposition to the fee request, less than one-third of the request made by Plaintiff.

Finally, in Plaintiff's brief in opposition to Defendant's objections, Plaintiff states in a footnote that she

> also anticipates that she will incur approximately $20,000.00 of additional time spent after the filing of this memorandum and through the ultimate resolution of this case. Defendant received timely notice that Counsel would seek these additional fees. (ECF No. 93-1, p. 11). Plaintiff reserves the right to seek this additional time prior to the conclusion of the final approval hearing.

ECF No. 96, p. 2, n. 2.

I will address the Defendants' objections and the Plaintiff's responses, fix hourly billing rates, make a partial award of fees and costs for work done up until the Plaintiff's response to the objections to her fees and costs, and require the parties to meet and confer about the balance of the fees requested. I will also set a status conference to determine if a hearing is necessary to determine the final award of fees and costs, taking into account work done on the response to the Defendants' objections and any additional fees and costs incurred after that point in time..

A.      Reasonable Hourly Rates.

Pursuant to the lodestar method, the Court must first determine the reasonable hourly rate. "'Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community.' *Plumbers Union Local No. 690*, 2009 WL 2603162, at *1 (quoting *Rode*, 892 F.2d at 1183). The market rate is based on

the rate charged by attorneys in the region where the case is litigated. *See Pub. Interest Research Grp. of N.J.,* 51 F.3d at 1186-88." *Navarro* at *3. "The amount that should ultimately be awarded for attorneys' fees is within the discretion of the district court because it is better informed than an appellate court about the underlying litigation and an award of attorney fees is fact specific; but a district court should 'provide a concise but clear explanation of its reasons for the fee award.'" *Pub. Interest Research Grp. of N.J.* at 1184, quoting *Hensley*, 461 U.S. at 437.

"The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." *Id.* at 1185. Plaintiff seeks fees for her counsel at the following rates: Francis Greene - $500 per hour; Carlo Sabatini - $410 per hour; Thomas Soule - $395 per hour; Brett Freeman - $275 per hour; and various paralegals - $125 per hour.[4] In support of these rates, Plaintiff included in the joint appendix the following.

1)    Declaration of Francis R. Greene, Esq. (discussing the background and fees charged by Mr. Greene and Mr. Soule, both attorneys with the Edelman Firm);

2)    Declaration of Carlo Sabatini, Esq. (discussing the background and fees charged by Mr. Sabatini and Mr. Freeman, both members of the Sabatini Firm);

3)    Declaration of David A. Searles, Esq. (discussing his knowledge and familiarity with the hourly rates charged by attorneys in this district for FDCPA matters of similar complexity, by attorneys with similar levels of skill and experience);

---

[4] Plaintiff originally included in her claim time spent by several other attorneys, including Dan Edelman, Esq., Cassandra Miller, Esq., James Latturner, Esq., Michelle Teggelaar, Esq., and Tiffany Hardy, Esq. from the Edelman Firm, and Kristin Sabatini, Esq., from the Sabatini Firm. *See* ECF No. 96, p. 3, n. 4. The removal of these attorneys from the submitted invoices immediately reduces Plaintiff Elaine's claim by the amount of $4,572.50.

4) The schedule of ranges of attorney fees published by Community Legal Services of Philadelphia, for various years of experience, effective September 12, 2014.[5]

Defendants and Plaintiff more or less agree that the rates should be fixed by determining a reasonable rate in the district[6] where the case is litigated. They disagree vehemently, however, on how the Court should ascertain a reasonable hourly rate. Defendants argue that the rates charged by all four attorneys are unreasonable. ECF No. 97 at 1. They take issue with Plaintiff's reliance on two Third Circuit opinions, *Evans v. Port Auth. Of NY & NJ*, 273 F.3d 346 (3d Cir. 2001) and *Smith v. Phila. Hous. Auth.*, 107 F.3d 233 (3d Cir. 1997), claiming these cases are inapplicable to the instant matter because both were cases involving a statute other than the FDCPA. Curiously, after arguing that *Evans* is inapplicable, however, Defendants then suggest that this Court, like that in *Evans*, should order a hearing "on the reasonableness of the hourly rates sought by counsel for Plaintiff [which] would allow for both Plaintiff and Defendants to present affidavits and other evidence to support their positions regarding reasonable market rates for Plaintiff's attorneys in this matter." ECF No. 97 at 3. Given that Plaintiffs filed their "affidavits and other evidence to support their position" in January of 2017, ECF No. 93, and Defendants filed their reply almost six weeks later, and have since that time had over a year to produce to the Court any "affidavits and other

---

[5] The joint appendix was filed approximately two weeks after Defendants filed their "response in opposition to plaintiff's request for attorneys' fees and costs." While Defendants were in possession of Plaintiff's billing data, as a result of settlement negotiations, some of Defendants' arguments were made at the time that Plaintiff had not filed any affidavits or other documents in support of her requested rates. As a result, I will concentrate on the arguments made by Defendants in their reply brief, after Plaintiff filed her arguments and supporting affidavits and fee schedules.

[6] Defendants use the term "region" rather than "district," undoubtedly because they rely on several cases from the Middle District of Pennsylvania. *See* ECF No. 91 at 6. Although at least one reported decision lumps the Middle and Eastern Districts of Pennsylvania together for purposes of determining reasonable hourly rates, *Romeo v. Simm Assocs.*, 170 F.Supp.3d 750, 752 (M.D.PA. 2016), I am not convinced that hourly rates in Harrisburg and Philadelphia would always fall into exactly the same range.

evidence" to rebut that provided by the Plaintiff, I conclude that a hearing on the issue of the hourly rate would add nothing material to the discussion.

Rather than examining the evidence in this record to determine a reasonable hourly rate for each attorney, Defendants use a mash-up of non-precedential opinions to suggest that reasonable hourly rates for the attorneys in this case are: $300 for Mr. Sabatini, $250 for Mr. Greene, and $200 for both Mr. Soule and Mr. Freeman. These cases are inapposite for several reasons: (1) some of the cases relied upon are examining the work of other attorneys, for work in FDCPA cases in other districts. *Castro v. McCarthy & Jennerich*, 2013 WL 335973 (D.N.J. 2013) (Attorney Dennis Kurz, District of New Jersey); *Overly v. Global Credit & Collection Corp.*, 2011 WL 2651807 (M.D. Pa. 2011) (Attorney Craig Thor Kimmel, Middle District of Pennsylvania)[7]; (2) other cited cases are in this district, but for other attorneys, who may, or may not, have a similar skill and experience level to the attorneys in this case. *Navarro v. Monarch Recovery Management, Inc.*, 2014 WL 2805244 (E.D. Pa. 2014) (Attorney Jason Rettig); *Zavodnick v. Gordon & Weisburg*, 2012 WL 2036493 (E.D. Pa. 2012) (Attorney Craig Thor Kimmel); *Harlan v. NRA Group*, 2011 WL 813961 (E.D. Pa. 2011) (Attorney Andrew Milz, Attorney Cary Flitter); (3) and finally, some of the cases are for one or more of the attorneys in this case, but for work in another district. *Lukawski v. Client Services, Inc.*, 2013 WL 6154544 (M.D. Pa. 2013) (Carlo Sabatini, Middle District of

---

[7] Magistrate Judge Martin Carlson noted in his decision reducing Mr. Kimmel's hourly rate from the requested $425 to $200, that Mr. Kimmel had "cit[ed] fee claims premised on large urban legal markets like Philadelphia and the District of Columbia," while the *relevant* market was the Middle District of Pennsylvania, where attorneys of similar background and experience "typically command a fee rate of between $200 and $300." *Overly* at *11.

Pennsylvania); *Romeo v. Simm Assocs.*, 170 F.Supp.3d 750 (M.D. Pa. 2016) (Carlo Sabatini and Brett Freeman, Middle District of Pennsylvania)[8].

A few of the cases cited by Defendants deserve special scrutiny, as they are instructive in one way or another in this matter. In *Zavodnick v. Weisberg, P.C.*, 2012 WL 2036493 (E.D. Pa. 2012), Judge Diamond examined "a simple Fair Debt Collection Practices Act case" in which Kimmel and Silverman, PC represented the Plaintiff. The Court slashed the fees requested, noting that the Plaintiff's attorneys "actually performed precious little original work on Plaintiff's behalf" and observing that other courts in this Circuit have also drastically reduced this particular firm's fees in the past. *Id.* at *1, citing *Levy v. Global Credit and Collection Corp.*, 2011 WL 5117855 (D.N.J. 2011). Judge Diamond went so far as to state, "I am compelled to admonish Kimmel and Silverman that it may not continue with impunity to describe 'cut and paste' efforts as original or to advance arguments and evidence it knows to be baseless." *Id.* at *2. The Court reduced the fee request of $9,786.50 to $3,053.

To support the hourly rates requested for various attorneys in the Kimmel firm, the Plaintiff submitted a 2007 "Consumer Law Attorney Fee Survey," created by the National Association of Consumer Advocates and Consumer Law Attorneys and purporting to contain "average" attorney's fees in the mid-Atlantic region, and the "Laffey Matrix," created by the United States Attorney's Office for the District of Columbia. The Court rejected both of these charts, which it found did not fairly represent rates in this district, and instead used the 2006 fee schedule published by the Philadelphia Community Legal Services, Inc., which the court found better reflected

---

[8] Plaintiff correctly notes in her response that Defendants misquoted Mr. Sabatini's awarded rate as $350 per hour in this decision. The court awarded Mr. Sabatini a rate of $375 per hour.

hourly rates in this community. The Judge found the CLS Fee Schedule relevant despite the fact that it does not reflect any specialized skills or experience, and, at the time of the decision, was six years old. *Id.* at *16. Judge Diamond also stated that, although Attorney Kimmel argued that he had received his requested rate of $425 per hour "from courts in individual and class action claims," he offered no citations to cases in which such an award was actually made by any court. *Id.* at *14.

In contrast to the *Zavodnick* decision, the work done by the Edelman and Sabatini Firms in this case was not "cut and paste," but involved a class action that accumulated close to 100 docket entries, and involved significant motion practice and discovery and protracted settlement negotiations. Plaintiff's counsel's legal work was excellent. Rather than requesting rates based upon the Chicago market (where the Edelman attorneys are located) or relying on fee schedules not previously adopted in this district, Plaintiff's attorneys utilized the CLS Fee Schedule from the start, and each of the attorneys' rates are within the range found there (Mr. Sabatini's rates are actually slightly lower than the CLS Schedule provides for his years of experience). Additionally, Plaintiff provided an affidavit from a very experienced attorney, admitted in this district, who confirmed that the rates charged by all of the attorneys involved were commensurate with those awarded by courts in this district and in the Third Circuit. And finally, Plaintiff's attorneys provided citations to cases in which they were awarded the rates requested in this case. *See* ECF No. 93-1, p. 88 regarding the Edelman Firm Attorneys. Both local attorneys, Mr. Sabatini and Mr. Freeman, were awarded the same hourly rates requested here, $410 and $275 per hour[9], by U.S. District Judge Nitza

---

[9] The order by U.S. District Judge Quinones does not state the exact hourly rate awarded to each attorney, but granted Plaintiff's requested $321,340 in fees, reflecting 743.2 hours expended by the attorneys and

Quinones Alejandro in *Blandina v. Midland Funding, LLC*, 2016 WL 3101270 (E.D. Pa. June 1, 2016). Although available to Defendants at the time they filed their opposition to Plaintiff's requested fees, they do not address the *Blandina* decision.

Defendants do rely, however, on the decision from the Middle District of Pennsylvania by United States District Judge Nealon in *Lukawski v. Client Services, Inc.*, 2013 WL 6154544 (M.D. Pa. Nov. 22, 2013). The action, filed under the FDCPA, involved a single Plaintiff, and was resolved approximately two months after it was removed from Common Pleas Court of Lackawanna County to the Middle District. Most interestingly, the attorney for Plaintiff was Mr. Sabatini, and Defendant was represented by Ronald Metcho, II, Esq., defense counsel in this matter. I note that many of the same arguments and positions of the parties in *Lukawski* are duplicated here. For example, Mr. Sabatini's firm subtracted a discount from their original fee request to account for minor issues Defendant had with requested time, as they did here. They also submitted affidavits from other FDCPA plaintiffs' attorneys to support their requested hourly rates. As in this case, Defendant did not submit any evidence to rebut the "community market rate" set forth by the Plaintiff as appropriate. While Judge Nealon did slightly reduce the Plaintiff's requested hourly rates, he did so as a direct result of an extensive evaluation of rates *in the Middle District of Pennsylvania* conducted by Magistrate Judge Martin Carlson and ultimately adopted by the Chief Judge of that district as setting a rate of between $200 and $300 per hour for "an attorney of plaintiff counsel's (sic) background, and experience in this particular legal marketplace" for FDCPA matters. *Id.* at *2 citing *O'Quinn v. Recovery Partners, LLC*, 2011 WL 2976288 (M.D. Pa. June 27,

---

paralegals working on an FDCPA class action case similar to this one in 2016. I have no reason to doubt Mr. Sabatini's assertion in his declaration that the rates awarded were the same as requested here. ECF No. 93-1, at 25-26.

2011) (Report and Recommendation), adopted, 2011 WL 2971795 (M.D. Pa. July 21, 2011).

In support of her hourly rate requests in this case, Plaintiff Elaine submitted the following evidence for the Court's consideration. First, the Declaration of Francis Greene sets forth the experience of Chicago attorneys Greene and Thomas Soule,[10] as well as several other attorneys whose time on this case has now been removed. Mr. Greene has close to 18 years' experience as an attorney, all of it with the Edelman Firm. Mr. Greene advised that he has litigated "dozens" of FDCPA cases, both individual and class actions. He is not admitted to practice in Pennsylvania or the Third Circuit, but is a member of the Illinois Bar, and is admitted to practice in the Seventh Circuit, the U.S. District Courts for the Northern, Central, and Southern Districts of Illinois, Eastern Wisconsin, Northern Indiana, and Western Texas. He cites several cases in which courts have accepted his $500 per hour rate in the Northern District of Illinois, and one in the District of New Jersey. ECF 93-1 at 87-88. Finally, of the thirteen cases he lists as "some" of the reported cases in which he was counsel of record, nine involved actions brought under the FDCPA, several of which were class actions. The remainder involved other consumer protection statutes such as the Truth in Lending Act (TILA) or the Telephone Consumer Protection Act (TCPA). *Id.* at 88. Pursuant to the CLS Fee Schedule submitted in the Joint Appendix, an attorney with 16 to 20 years' experience would command an hourly rate from $435 to $505 per hour.

Mr. Greene's declaration also provides information on Thomas Soule, Esq., who also joined the Edelman firm upon his graduation from law school in 2003, and who

---

[10] Mr. Soule has apparently left the Edelman firm, but all of his hours billed on this case were worked while he was employed there.

worked on this case until sometime in 2015, when he had approximately 12 years' experience. The declaration lists eleven reported cases in which Mr. Soule was counsel of record. Of those eleven, three were FDCPA cases, and the remainder involved other consumer protection statutes, including the Fair and Accurate Credit Transactions Act (FACTA), the Fair Credit Reporting Act (FCRA), and the Electronic Funds Transfers Act (EFTA). *Id.* The CLS Fee Schedule provides for a rate of $350 to $420 per hour for attorneys with 11-15 years' experience.

Carlo Sabatini provided a declaration wherein he advises that he has been an attorney since graduating law school in 1999, or approximately 18 years. His firm has handled "several hundred" cases involving bankruptcy laws and consumer protection statutes. He teaches continuing legal education courses on the FDCPA, the Real Estate Settlement Procedures Act, and the Bankruptcy Code. His firm's practice is limited almost exclusively to matters involving various consumer protection statutes and the Bankruptcy Code. Mr. Sabatini has been appointed as co-counsel for certified classes of consumers in FDCPA in the Eastern and Middle Districts of Pennsylvania. Mr. Sabatini's requested $410 per hour rate is slightly below the CLS Fee Schedule's $435 to $505 per hour rate for attorneys with 16-20 years' experience.

Finally Mr. Sabatini discussed Brett Freeman, Esq. in his declaration, advising that Mr. Freeman became an attorney in 2010, and has practiced almost exclusively in the consumer protection and bankruptcy fields. He has represented consumers in several hundred actions. He is admitted to practice in the Supreme Court of the United States, and the Middle and Western Districts of Pennsylvania. Mr. Freeman's requested $275 per hour rate falls within the CLS Fee Schedule's $265 to $335 per hour rate for attorneys with 6 to 10 years' experience.

David A. Searles, Esq., is of counsel to Francis & Mailman, P.C., is admitted to practice in courts ranging from the Supreme Court of the United States, through the Third and other Federal Circuit Courts, to a number of Federal District Courts including the Eastern District of Pennsylvania. He has been an attorney since 1976, practicing in the areas of consumer and bankruptcy law. With 46 years' experience in the field, he bills at a rate of $700 per hour. Mr. Searles reviewed the declarations of Francis Greene, Esq. regarding the Edelman Firm's hourly rates, and that of Carlo Sabatini, Esq., regarding the rates charged by the attorneys and paralegals at the Sabatini Firm. Mr. Searles opined that "the proposed hourly rates [charged by the attorneys in the Edelman Firm] are reasonable and are within the range currently charged by similarly experienced attorneys for practice in the United States District Court for the Eastern District of Pennsylvania." ECF No. 93-1, pp. 103-04. Regarding Mr. Sabatini, Mr. Searles advised that he is familiar with his work as a consumer rights attorney, and knows him to be extremely competent in this area. Mr. Searles also found the rates charged by Mr. Sabatini and Mr. Freeman to be *below* the range currently charged by similarly experienced attorneys in the Philadelphia area generally and within the Eastern District of Pennsylvania District Court in particular. Finally, Mr. Searles found the $125 per hour rate assigned to the paralegals in this case to be a reasonable lodestar fee, and noted that it is, in fact, lower than the $140-$165 per hour rate charged by his firm for paralegal work in consumer protection matters. *Id.* at p. 105.

In response to Plaintiff's evidence of her attorneys' skill and experience, Defendants argue:

> It remains Defendants' position that the hourly rates sought by counsel for Plaintiff in this matter are unreasonable. The standard in this District is clear—Courts are to "assess the experience and skill of the prevailing party's attorneys

> and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" and the party seeking fees "bears the burden of establishing by way of satisfactory evidence that the requested hourly rates meet this standard." *Maldonado*, 256 F.3d at 184.

ECF No. 97 at 3. I disagree that counsel for Plaintiff have sought unreasonable hourly rates, but I agree with Defendant's espousal of the standard in this District. Whether courts are examining an FDCPA matter that settles in a matter of weeks with a couple of dozen docket entries, or a complex class action involving debt collection or civil rights violations, the court is required to conduct a "thorough and searching analysis." *Evans*, 273 F.3d at 362. Indeed, the Third Circuit admonished the district court in *Evans* that it had failed to do enough to examine the fee dispute: "Contrary to the suggestion of the District Court, it *is* necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request." *Id.*

While the parties each provided such a line-by-line examination of the bills themselves (see discussion below), Defendants have provided no evidence to the Court to contradict the affidavits and fee schedule provided by Plaintiff to support their requested hourly rate. In their reply, Defendants merely reiterate their position that the four attorneys' rates should be lowered to $300 (Mr. Sabatini), $250 (Mr. Greene), and $200 (Mr. Soule and Mr. Freeman), and then state:

> Defendants' position on the reasonable rates for counsel for Plaintiff is based off of, *inter alia*, Mr. Greene practicing law since 2000 and devoting only 25% of his practice to consumer law, Mr. Soule's lack of experience in litigating FDCPA claims in any District and the prior legal precedent cited in Defendants' Opposition regarding the previous rates afforded to Mr. Sabatini and Mr. Freeman (citing *Lukawski's* ruling that Mr. Sabatini receive $300 per hour and Mr. Freeman $200 per hour).

ECF 97 at 3-4. I do not find this argument persuasive. Nothing submitted by Defendant supports the "devoting only 25% of his practice to consumer law" argument regarding

Mr. Greene, nor suggests Mr. Soule "lacks experience" in litigating FDCPA claims in any district.[11] And I will decline to follow a ruling from the Middle District of Pennsylvania that relied entirely on a particular analysis of hourly rates awarded to attorneys in the Middle District, and will instead follow the decision by the District Court in this District, which awarded the same hourly rates requested in this case for work in a similar FDCPA class action. I find that Plaintiff Elaine has met her burden of providing satisfactory evidence of the reasonableness of the requested hourly rates given the skill and experience of each attorney, the complexity of the litigation, and the prevailing rates in the relevant community. I will therefore award fees at the requested rates: $500 per hour for Mr. Greene, $410 per hour for Mr. Sabatini, $395 per hour for Mr. Soule, $275 per hour for Mr. Freeman, and $125 per hour for work performed by paralegals. I find that each of these rates are reasonable, given the levels of skill and experience of each attorney, my review of case law on hourly rates previously awarded in FDCPA claims of similar complexity in this district, and my own knowledge of the work actually performed by Plaintiff's attorneys in the litigation of this class action.

B.    Defendants' Claims of Billing for Clerical Work, Intra-Attorney Communications, and Duplicate Entries.

Defendants' initial response in opposition to Plaintiff's requested fees contends that the original bills submitted by Plaintiff's counsel included time entries for matters that were purely clerical in nature, that is, "administrative tasks" which would normally not be billed to a client, and, they argue, should not be included in the fee award. *Zavodnick* 2012 WL 2036493 at *6. ("As a general rule, time that would not be billed to

---

[11] In fact, the information contained in Mr. Greene's declaration suggests the opposite, that both attorneys have experience in litigating FDCPA matters, as well as a familiarity with a number of other consumer protection statutes.

a client cannot be imposed on an adversary. . . . [t]hus administrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition.") Defendants contend that the bills included 10.7 hours of clerical work which should be excluded from the Edelman Firm's invoice, and 7.2 hours of clerical work which should be excluded from the Sabatini Firm's invoice. In support, Defendants provide a line-by-line analysis of entries which they claim should be removed. ECF No. 91, pp. 11-20.

Defendants next note an "unusually high number of intra-office communications between and among both the attorneys at Edelman [] and their local counsel, Sabatini Law Firm, LLC." *Id.* at 20. Defendants contend, [u]nder the applicable law, when several attorneys bill a large number of hours for strategy and conferencing, a reduction in the fee request is plainly appropriate." *Id.* citing *Citibank, N.A. v. Hicks*, 2004 WL 1895189 (E.D. Pa. 2004).[12] Defendants detail 8.7 hours of time on Edelman's invoice and 36.2 hours on Sabatini's invoice which they urge should be excluded. *Id.* at 20-47.

Finally, Defendants claim 2.9 hours of duplicate billing occurred on Edelman's invoice, and 16.6 hours of such entries on Sabatini's invoice, all of which should be excluded. They again provide line-by-line invoice items which they urge me to strike from Plaintiff's requested fees. *Id.* at 48-60. Other than listing each line item and making a general argument for each of the three categories, Defendants do not outline how or why various individual items billed by Plaintiff's counsel qualify as clerical, or inappropriate intra- or inter-office communications. With regard to duplicate charges, Defendants allege that the majority of duplicate entries are by Mr. Sabatini, for

---

[12] The exact quote from *Citibank* is "[t]urning to the Third Circuit for guidance on this issue, we find persuasive its holding that when several attorneys bill a large number of hours for strategy and conferencing, a reduction in the fee request *may be* appropriate." *Id.* at *6 (emphasis added).

reviewing email messages between Francis Greene and defense counsel, and for attending the telephonic depositions of Defendants' corporate representatives, which were actually conducted by Mr. Greene. Additionally, Defendants claim that time included by Mr. Freeman for reviewing a Motion *in Limine* drafted by co-counsel is duplicative.

In response, Plaintiff first notes that in the joint appendix, she provided a declaration from attorney Phillip Stern, Esq., an experienced consumer protection attorney, who reviewed all of Plaintiff's counsels' invoices in this matter and found them to be, with very minor exceptions, reasonable. ECF No. 93-1, pp. 107-113. She attaches to her brief a copy of all of the disputed line items contained in Defendants' pleading, divided by category of objections, i.e. clerical objections, ECF No. 96-1, pp. 1-8; objections to intra- and inter-office communications, *Id.* at 8-34; and objections for alleged duplicative entries, *Id.* at 34-46. With regard to each entry, Plaintiff notes whether she: (1) agrees with Defendants and deletes the entry; (2) believes the entry is valid; or (3) had previously eliminated the entry pursuant to the earlier invoice reduction, meaning that the entry is no longer being sought for payment. After a line-by-line review, Plaintiff made significant reductions based upon Defendants' objections.[13] These deductions are thoughtful and well-reasoned, and appear to have been made in a good-faith effort to reach a fair resolution of the fee issue. I also agree with Plaintiff's various arguments regarding the failure of Defendants to adequately support their

---

[13] Plaintiff made total deductions of 1.0 hour from Francis Greene's time, .9 hour from Thomas Soule's time, 8.4 hours from Carlo Sabatini's time, .6 hour from Brett Freeman's time, and 12.1 hours of paralegal time. ECF No. 96, pp. 8, 17, 19. Multiplying these amounts by the hourly rates for each attorney or paralegal, this removes $5,977.00 from the invoices. I note that this deduction is in addition to an original discount taken from the invoices of the Sabatini Firm of $5,232.00, a practice which the Sabatini Firm has followed in other cases. *See Lukawski* 2013 WL 6154544 at *3.

additional objections. I therefore accept Plaintiff's revised billing as set forth in her brief in opposition to defendants' objection to her request for attorney's fees and costs.

Based on what I have seen so far, I see nothing unreasonable in the time expended by Attorneys Greene, Sabatini, and Freeman in the preparation of their brief in opposition to Defendants' objection to Plaintiff's request for attorney's fees and costs. The Defendants have requested a hearing on this issue, and I will permit it, but not before the parties meet and confer on the remaining fees. Given the resolution of issues in this opinion, I would expect counsel for the parties to be able to make an intelligent extrapolation of the results of any hearing on the subject, at a significant savings to both parties. I will require the parties to report to me, via status conference call with their attorneys, the results of their meeting and conference. I will not schedule a hearing on the $16,578 in fees claimed for the preparation of the Plaintiff's response to objections until the status conference.

IV.    CONCLUSION

Plaintiff will immediately be awarded $134,572.50 in attorney's fees, and $6009.95 in costs. The parties, through counsel, will meet and confer promptly on the $16,578.00 in fees to Plaintiff for the preparation of their brief in opposition to Defendants' objection to the award of attorney's fees. I will hold a status conference call with the attorneys on Thursday, April 12, 2018. If the matter is not resolved at that time, I will conduct a hearing at a time and date to be determined for the purpose of addressing any objections Defendants have to the additional fees and costs requested by Plaintiff. I will set a briefing schedule, with an emphasis on "brief," at the time of the status conference, if a hearing is necessary. Plaintiff will be limited to a maximum of $15,000 in additional fees for preparation and attendance at that hearing, the meeting and conference, and the status call.

Dated: April 9, 2018.

_s/Richard A. Lloret_____
HONORABLE RICHARD A. LLORET
U.S. MAGISTRATE JUDGE